UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 5:21-CR-50022-RAL |
| Plaintiff, | |
| | OPINION AND ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE AND FOR SENTENCE REDUCTION |
| vs. | |
| THOMAS PRADO, | |
| Defendant. | |

Thomas Prado seeks compassionate release based on his mother's deteriorating health, which he argues constitutes an extraordinary and compelling reason to reduce his sentence. Doc. 71. Prado filed a motion to appoint counsel, Doc. 74, to assist in replying to the United States's response to his motion for compassionate release, Doc. 73. Prado also seeks a reduction in his sentence pursuant to Parts A and B of Amendment 821 to the Sentencing Guidelines and, again, the appointment of counsel. Doc. 78. For the reasons explained, this Court denies all motions.

## I.       Facts and Procedural History

On January 7, 2022, Prado pleaded guilty to conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Doc. 41. According to the plea agreement's factual basis, Prado participated in a conspiracy to distribute methamphetamine from March 2016 until March 2021. Doc. 42. His participation in the conspiracy involved obtaining methamphetamine in California and shipping it via United Stated Postal Service to Pine Ridge, South Dakota and Rushville, Nebraska. Id. Prado also distributed methamphetamine to others for

1

use in the Pine Ridge area. Id. During the conspiracy, Prado distributed at least 1.5 kilograms but less than 5 kilograms of methamphetamine. Id.

On July 1, 2022, this Court sentenced Prado to 120 months' imprisonment followed by five years of supervised release. Doc. 64. At the time this Opinion and Order was drafted, Prado was serving his sentence at Duluth FPC.   See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov /inmateloc/ (last visited August 27, 2024)  He is scheduled to be released on April 15, 2029. Id.

On October 27, 2022, Prado applied for compassionate release through the Bureau of Prisons (BOP). Doc. 72. The BOP denied his request on November 1, 2022. On March 27, 2023, Prado appealed his case within the BOP, and on May 3, 2023, his appeal was denied. Id. Prado then filed with this Court a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 71. Prado also has filed with this Court a pro se motion for a sentence reduction. Doc. 78. The Federal Public Defender of North and South Dakota by Standing Order has received appointment for defendants in these cases to represent defendants in such cases, but chose not to supplement the record on either of Prado's motions. The United States opposes both motions.[1] Docs. 73, 83.

## II.    First Step Act

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021).  However, 18

---

[1] In its opposition to Prado's motion for compassionate release, the United States addresses COVID-19 and Prado's medical conditions although Prado does not cite either as grounds for compassionate release. Doc. 73. Because Prado does not request compassionate release based on either COVID-19 or his medical conditions, this Court does not address them.

U.S.C. § 3582(c)(1)(A) provides an exception to this general rule. Section 3582(c)(1)(A), as amended by the First Step Act, allows district courts to hear and decide motions for a reduced sentence filed by prisoners themselves, so long as the prisoner exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf, or after 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. On October 27, 2022, Prado submitted his administrative request for compassionate release to the warden of his facility, who subsequently denied his request. Doc. 72 at 217. Prado exhausted his administrative remedies,[2] and his motion is ripe for review.

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after (1) the court finds that extraordinary and compelling reasons exist,[3] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here § 1B1.13; and (3) an examination of the § 3553(a) sentencing factors supports a sentence reduction. § 3582(c)(1)(A)(i)–(ii).

## A. Extraordinary and Compelling Reasons

Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress charged the Sentencing Commission with issuing general policy statements outlining the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling

---

[2] The Eighth Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional but serves as a "mandatory claim-processing rule" that must be enforced if raised by the opposing party. United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021). The United States does not raise any failure to exhaust argument. Doc. 73. This Court, therefore, proceeds to review Prado's motion on its merits.

[3] A court could also grant a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison, see § 3582(c)(1)(A)(ii), but Prado fulfills neither of those requirements, so the Court confines its analysis to the extraordinary and compelling reasons exception under § 3582(c)(1)(A)(ii).

reasons for sentence reduction [and] the criteria to be applied." § 994(a)(2)(c), (t).   Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment.   U.S.S.G. § 1B1.13(b).   As amended, "extraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences.   A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act.   United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020).   In his motion, Prado raises family circumstances, specifically the incapacitation of his mother, as an extraordinary and compelling reason warranting release.   Doc. 71.

Section 1B1.13(b)(3) enumerates the family circumstances that a court may consider in deciding whether to grant compassionate release.   Under U.S.S.G. § 1B1.13(b)(3)(C), the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for compassionate release. To meet the requirements of U.S.S.G. § 1B1.13(b)(3)(C), the defendant must show that (1) a parent is incapacitated; and (2) the defendant is the only available caregiver.

Prado has satisfied the first requirement by showing that his mother is incapacitated. Prado's mother is 95 years old.   Doc. 72 at 213.   She was diagnosed with age-related macular degeneration, a progressive disease, which has led to "almost total blindness."   Id. at 213-15.   As a result, and in conjunction with her age and other ailments, including atrial fibrillation and a hernia of the right side of her abdomen, her healthcare provider recommends that she receive assistance

4

with daily activities of living. Id. Given her serious disabilities and the recommendation that she receive daily assistance, Prado has shown that his mother is incapacitated.

Despite his mother's incapacitation, Prado falls short of meeting the second requirement. The language of § 1B1.13(b)(3)(C) is clear: the defendant must be the *only* available caregiver. "Section 1B1.13(b)(3)(C) does not provide a potential basis for relief premised on preference—it does so based on necessity." United States v. Taylor, No. 06-00699-3, 2024 WL 3594315, at *6 (D. N.J. July 31, 2024). The availability of any other potential caregiver is enough to preclude compassionate release for extraordinary and compelling reasons under § 1B1.13(b)(3)(C). See Delavan v. United States, No. 4:18-cr-023, 2024 WL 2958956, at *4 (E.D. Va. June 12, 2024) (denying compassionate release where inmate's mother with macular degeneration had another son living in a different state); United States v. Taveras, No. 4:19-cr-40049, 2024 WL 1606013, at *4 (D. Mass. April 12, 2024) (finding defendant was not the only caretaker for his mother because his mother's neighbors helped when needed).

Although Prado's mother expressed a preference for Prado to serve as her caretaker, Doc. 77, he is not the only person available. Prado has a brother, Frank Prado, who lives in Nebraska and is aware of his mother's condition. Doc. 76. Additionally, in one of her letters to the Court, Prado's mother acknowledged that her granddaughters help when they can. Doc. 71-1 at 1. Prado has failed to show he is the only available caretaker for his mother, and thus, has not shown there are extraordinary and compelling reasons for compassionate release.

## B. Section 3553(a) Sentencing Factors

Although a court need not consider the § 3553(a) factors when there are no extraordinary or compelling reasons to reduce a sentence, United States v. Brown, No. 4:18-CR-40138–LLP,

2023 U.S. Dist. Lexis 83723, *12 (D.S.D. May 9, 2023), a review of the § 3553(a) factors weighs

against granting compassionate release to Prado. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is

"'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in

§ 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011).

The nature and circumstances of the offense weigh against granting Prado compassionate

release. Prado was involved in the shipping and transportation of large quantities of

methamphetamine from California to Pine Ridge. Doc. 62 at 3-4. Prado played no small role in

the conspiracy. In addition to physically transporting the methamphetamine to South Dakota,

Prado fronted the drugs to others for further distribution. Id. at 7. His role as a manager or

supervisor of the conspiracy resulted in the increased offense level under USSG § 3B1.1(b). Id.

Prado's personal history and characteristics neither weigh in favor nor against granting

compassionate release. Prado was raised by his mother, reported having a good childhood, and

graduated high school. Id. at 9. He experienced a tumultuous marriage, which resulted in his only

conviction for inflicting corporal injury on spouse/cohabitant in California. Id. at 8-9. However,

he and his ex-wife are on good terms and get along well today. Id. He has one son who he reports having a close relationship with. Id. at 10. Starting at the age of 25 and lasting up until his arrest in March 2021, Prado used methamphetamine daily. Id. at 11. He had some work history, although it was unclear how recently he had held gainful employment if at all during the time of the conspiracy at issue. Id. at 12.

A sentencing judge must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment, as well as the need to protect the public from further crimes of the defendant and to afford adequate deterrence. § 3553(a)(2)(A)–(C). Considering these factors, this Court believes that its original sentence remains appropriate to achieve the purposes of punishment, deterrence, rehabilitation, and the need to protect the public. After thoroughly reviewing the record of this case in light of the remaining § 3553(a) factors, including the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide educational, vocational, or correctional treatment in the most effective manner, this Court concludes that these factors are not served by a reduced sentence.

### III.   Amendment 821

Prado also seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2). Doc. 78. Prado's motion references both Part A and Part B of Amendment 821 to the Sentencing Guidelines, so this Court will address Prado's eligibility for a sentence reduction under both provisions.

### A. Part A

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision states:

Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, a person who otherwise has 7 criminal history points or more now receives 1 additional "status" criminal history point, instead of 2, while one who otherwise has 6 criminal history points or fewer receives no status points. On August 24, 2023, the Commission decided that this change applies retroactively. See § 1B1.10(e)(2) (Nov. 1, 2023).

Prado did not receive an additional 2 "status points" for committing his offense while under any criminal justice sentence. Doc. 62. Thus, § 4A1.1(e) does not apply to his case.

## B. Part B

In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission, effective November 1, 2023, added what now appears in §4C1.1(a), providing a 2-offense-level reduction for many offenders who present zero criminal history points. The new provision states:

§4C1.1. Adjustment for Certain Zero-Point Offenders
(a) ADJUSTMENT.—If the defendant meets all of the following criteria:
    (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
    (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
    (3) the defendant did not use violence or credible threats of violence in connection with the offense;
    (4) the offense did not result in death or serious bodily injury;
    (5) the instant offense of conviction is not a sex offense;
    (6) the defendant did not personally cause substantial financial hardship;
    (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
    (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
    (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
    (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; decrease the offense level determined under Chapters Two and Three by 2 levels.

On August 24, 2023, the Sentencing Commission determined that this change would apply retroactively. The Sentencing Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. See § 1B1.10(e)(2) (Nov. 1, 2023).

Prado fails to meet the criteria for a sentence reduction pursuant to § 4C1.1. Although Prado arrived at sentencing with zero criminal history points, he received a 3-point adjustment under §3B1.1. Doc. 62 at 7. A defendant who receives an adjustment under § 3B1.1 is ineligible for a sentence reduction. § 4C1.1(a)(10).

This Court recognizes that § 4C1.1(a)(10) lists two conditions: "the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) **and** was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." One could read § 4C1.1(a)(10) in the conjunctive, requiring that both conditions be met to preclude a sentence reduction. Under that reading, Prado arguably might meet the criteria for a sentence reduction under § 4C1.1(a) depending on whether he was engaged in a continuing criminal enterprise. But see Pulsifer v. United States, 601 U.S. 124, 141 (2024) (reading safety valve's use of "and" among a list of requirements not as creating a single condition for eligibility but rather as creating three necessary conditions). However, this Court does not adopt such a reading.

Instead, this Court reads § 4C1.1(a)(10) to bar relief "if either of the two disqualifications for relief in that section is present in an individual's case." United States v. Diaz-Pellegaud, No. 4:09-cr-40029, 2024 WL 417105, at *2 (D.S.D. Feb. 5, 2024). Section 4C1.1 requires the defendant meet "all of the . . . criteria," and one of the criteria is to not receive an adjustment under § 3B1.1. "[A]s a matter of logic, if a zero-point offender is only eligible for a 2-level decrease when both A and B are false, then it necessarily follows that he is not eligible if either A or B is

9

true." United States v. Owusu, No. 3:18-cr-77, 2023 WL 93286368, at *1 (N.D. Fla. Nov. 21, 2023). This reading of § 4C1.1(a)(10) appears to align with every other district court to rule on the matter. See United States v. Arroyo-Mata, No. 09-13, 2024 WL 1367796, at *2 n.6 (N.D. Ga. Apr. 1, 2024) (collecting cases). Because Prado failed to meet one of the criteria listed in § 4C1.1(a)(10), he is ineligible for relief.

## IV.   Conclusion and Order

No extraordinary and compelling reasons exist to grant Thomas Prado's motion for compassionate release at this time, and even if such reasons did exist, the § 3553(a) factors counsel against a reduction in his sentence. Additionally, Prado is ineligible for a sentence reduction under either Part A or Part B of Amendment 821 to the Sentencing Guidelines. Therefore, it is hereby

ORDERED that the Motion for Compassionate Release, Doc. 71, is denied. It is further

ORDERED that the Motion to Appoint Counsel, Doc. 74, is denied. It is further

ORDERED that the Motion to Reduce Sentence and Motion to Appoint Counsel, Doc. 78, is denied.

DATED this 28ᵗʰ day of August, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

10